By the Court.—Sedgwick, J.
We must consider with the learned judge who directed the verdict, that at the time the bark was upon the reef at Cow Bay, she was totally lost under the policy. The character of the coast, the season, when there was the *335 greatest probability of gales, and a destructive sea, the-situation of the bark on the rocks under the cliff, contain the oral testimony, that she could not then have been taken off'. At the best, there was a possibility that in the next season, she might be raised and removed. But in the meantime, how far she would be broken up by the storms and waves, was not certain, It was certain that, as the fact turned out, she must suffer more and more loss from time to time. It was not improbable that in the next spring, she could not be known as a vessel. The captain had no means of determining the event. It then being certain that before the vessel could be repaired, there must be a delay until spring to know whether or not she could then be moved, and it being just as likely, as not likely, that in the spring the only improvement in the circumstances would be that the weather and the sea would allow work to be done, but that then the vessel would have been broken up by the tempests and waves of the winter, there was at the time the bark went on shore, a loss, total to human calculation and obversations, subject to a chance, that there might be in the future enough left of her to permit her being moved. This mere chance, which was sold at public auction, was not a well-founded hope, that she could be repaired in the spring, and does not forbid the conclusion that under this policy the loss was total. If the question had been sent to the jury, and they had found that the captain was bound in November to have a reasonable hope that the bark would retain its character as a vessel through the winter, and until the calmer weather of the next year, it would have been against what seems to me to be the decided preponderance of the testimony on this point.*
*336 I, however, am of the opinion, that the master taking the bark from Sydney to Cow Bay was a deviation. She was insured to and at a port in Cape Breton. The owner or master had a right to select the port. The rights of the bark would be exhausted by use of one port. Even if it be granted that whatever (even another) port was by custom incidental to use of the selected port might itself be used, it is manifest that there was no right to enter one port, for the purpose of of selecting another port as the one at which the policy provided the insurers were to be liable, and to proceed to the other port. It was not meant that the liberty described in the policy might be enjoyed in full, in order to enable the master to select another port, with its additional risks. This would be using two ports in Cape Breton, the use thus made of Sydney not being by custom incidental to the use of the other. If such use of Sydney was part of the voyage, to take another port was a deviation ; if it were not, either geographically or by the custom of trade or navigation, then it was itself a deviation.
The testimony of the master is direct, that when he went into Sydney he had a purpose to take a cargo at either Big Glace Bay or Cow Bay, but had not made up his mind at which. He then used Sydney for a purpose which was not incidental to the use of another port. At the time, he had no knowledge of the terms of the policy, and had no regard one way or the other to its specific provisions. The fact was, he went into Sydney before he had selected another port to load at. The policy insured him at Sydney, but his departure thence to Cow Bay, and not to New York, was a deviation.
For the determination of the party’s right it is only necessary to see if the course taken was contemplated by the policy, and it is unimportant to see that the risks were increased. Yet we observe that Miramichi *337 was but a short sail from Cape Breton, and the owner or master had full opportunity of determining, before sailing, at which port it was best and safest to load.
We do not mean to decide what is the construction of such a policy as respects its giving a right to elect the port, and then to use another port which prudent navigation and the custom of trade have made necessary or incidental to the use of the first. We have endeavored to show that Sydney was not thus used. But we further remark, that the supposed use of Sydney would only be justifiable or incidental to the use of a single port, theretofore selected. The use of Sydney would, under the policy, be the use of the privileged port. In the present case, no other port having been selected, the master when he entered Sydney, intending to go to Big Glace Bay or Cow Bay, as he should thereafter choose, in fact used Sydney as incidental to the purposes of trade at more than one port, until he in fact made his final choice.
It is not correct that the risks were in fact the same as if the insured had chosen, as he might have done, that port of loading which would involve the longest delay at Sydney. The contract, in giving the election to the insured, should not be construed absolutely in view only of a selection most unfavorable to the insurer. Beyond, however, the risks existing through this longest period, there was actually the risk that lasted through the time spent in examining the different ports before selecting one, be it that which involved the least or the most delay. In the present case the master was prompt, and examined but two ports. If his course can be justified on principle, the difficulty will be to find in other cases whether the time spent was necessary or not, to the due selection from not only two ports, but several more that are on that side of Cape Breton. It can not be said there was no more risk, for the one or two or *338 three days then spent, might delay the vessel until the coming on of a destructive storm.
It would not change the conclusion to consider that Cow Bay was not a port. It was not within the port of Sydney. If the policy allowed only the use of that port, to depart from the direct voyage to New York was a deviation. I can not find any evidence tending to show that the bark was compelled to go into Sydney, by stress of weather or fear of disaster. She went in voluntarily for the convenience of the harbor only.
Under the evidence, I think the learned judge was right in holding, that the want of a certificate from the American Ship Masters’ Association did not prevent a recovery. There was but one inference to be drawn from the testimony on this point. The company dispensed with such a certificate, and received the premium after this. As we think there was a deviation, upon the present evidence, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.
Speir, J., concurred.

 This case was before the court, and a new trial ordered, because of a failure to prove total loss. See 34 Sup’r Ct. Rep. 310.